## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.  17-CR-** |
| | : | |
| **v.** | : | |
| | : | **18 U.S.C. §1343** |
| **TERRA GREEN,** | : | **(Wire Fraud),** |
| | : | **18 U.S.C. § 981(a)(1)(C),** |
| **Defendant.** | : | **28 U.S.C. § 2461(c), and** |
| | : | **21 U.S.C. § 853(p)** |
| | : | **(Criminal Forfeiture).** |
| | : | |

### INFORMATION

The United States Attorney hereby charges that:

### COUNT ONE
### (Wire Fraud)

#### Introduction

At all times material to this Information:

#### The Scheme to Defraud

1.     Company A is a public interest law firm located in Washington, D.C. Company A provides legal services in the areas of environmental law, fair housing, fair employment, voting rights medical care and reasonable accommodation for persons with disabilities.

2.     The defendant was hired as an office and information technology administrator by Company A on or about March 25, 2013.

3.     Prior to her employment with Company A, the defendant worked as an office manager for Company B, a non-profit organization in Washington, D.C.  The Executive Director of Company B personally referred the defendant for the position with Company A.

1

4.      As the office and technology administrator, the owners of Company A gave the defendant authority to carry out all management, bookkeeping and financial matters for Company A.

5.      The defendant kept the books for Company A.  She received and paid all bills and invoices for Company A. The defendant had check signing authority on the Company's checking account. Through online access, the defendant also had the ability to move funds among Company A's accounts. Company A also gave the defendant a company credit card so that she could pay for business expenses. Periodically, the defendant provided the owners of Company A financial statements. The defendant was responsible for reconciling Company A's bank statements with accounting entries in QuickBooks and providing financial information to Company A's outside accountants.

6.      The defendant was also responsible from managing the building ("12th Street property") in which Company A was located. The 12th Street property was owned by one of Company A's owners.

7.      The defendant kept the books for the 12th Street property in QuickBooks.  The defendant paid all bills and invoices for the 12th Street property, arranged and oversaw the maintenance of the 12th Street property.

8.      The defendant had the authority to negotiate and take other actions on behalf of Company A with respect to insurance, including health insurance, long-term disability insurance, worker's compensations and general liability insurance.

9.      From in or around June 1, 2014, through in or around September 2, 2015, in the District of Columbia and elsewhere, the defendant TERRA GREEN, devised and intended to devise a scheme to defraud and to obtain money from Company A, by means of materially false and fraudulent pretenses, representations, and promises as more fully described below.

2

## The Purpose of the Scheme to Defraud

10. It was a purpose of the scheme to defraud that the defendant TERRA GREEN embezzled approximately $154,790.64 from Company A by transferring money between Company A's accounts and then making cash withdrawals or depositing the money into bank accounts controlled by the defendant TERRA GREEN.

## Manner and Means

11. The owners of Company A discovered that the defendant's son, Al Johnson, was listed on Company A's health insurance bill as an employee of Company A. The defendant enrolled her son, Al Johnson, on Company A's health insurance plan on May 29, 2014, with an effective date of June 1, 2014. Al Johnson was never an employee of Company A and not eligible for enrollment.

12. From June 1, 2014, through August 31, 2015, Company A paid the entire cost of Al Johnson's health insurance for a total of $6,795.60.

13. On at least eighteen (18) occasions, between November 2013 and June 2015, the defendant, without authority, withdrew money from Company A's Bank of America account No. xxx2404. The defendant was never a signatory on Company A's Bank of America account No. xxx2404. Using on-line banking functions, the defendant transferred the funds to the 12th Street Property SunTrust account No. xx7250. The defendant then withdrew the money, more often than not by making a making a check payable to herself for "cash." These transactions resulted in a loss of $63,218.00 to Company A.

14. To conceal the fraudulent scheme, the defendant provided false financial statements to the owners of Company A regarding the Bank of America account No. xx2404. In the

3

last financial statement prepared by the defendant on June 19, 2015, the defendant stated that as of May 31, 2015, the Bank of America account No. xx2404 had a balance of $84,144.78.

15.     On July 26, 2013, the defendant, without authorization, caused a $3,000 wire transfer from the 12th Street property Capitol One account No. xx4950 to her personal PNC account No. xx2779.

16.     On July 31, 2013, the defendant, without authorization, wrote and signed a check in the amount of $525 to "New Haven Management" for her son, Al Johnson's, rent.

17.     On May 16, 2014, the defendant, without authorization, using the 12th Street property PNC account No. xx6876, drafted a check payable to "Brett Norman" for the purchase a Harley Davidson Motorcycle. The purchase of the Harley Davidson motorcycle resulted in a loss of $15,200 to Company.

18.     On June 24, 2014, and July 10, 2014, the defendant, without authorization, made two cash withdrawals from the 12th Street property PNC account No. xx6876. One withdrawal was for $6,000 and the other was for $2,500. The defendant deposited the cash into her personal Capitol One account No. xx2091.

19.     On August 14, 2014, the defendant made a payment to Marlo Furniture in the amount of $837.17 for personal expenses.

20.     On March 10, 2015, the defendant, without authorization paid the Singer Law Firm in Melbourne, FL $1,200 for representation for her son, Al Johnson, in a criminal matter.

21.     On March 30, 2015, the defendant made two ATM withdrawals from the 12th Street property PNC account No. xx6876. These two transactions resulted in a $1,000 loss to Company A.

22.     On at least four hundred (400) occasions, the defendant, without authorization, used her company issued credit card to make personal purchases. These unauthorized purchases resulted in a $28,676 loss to Company A.

23.     The defendant, without authorization, caused monthly automatic withdrawals from Company A's BB&T account totaling $3,863 to pay for her personal PEPCO account #6652636082.

24.     For several months during her tenure with Company A, the defendant, without authorization, used the 12th Street property SunTrust account No. xx7250 and Company A's BB&T account No. xx5044 to pay her rent to Westwood Place Apartments in Fort Washington, MD. These unauthorized payments resulted in a loss of $12,911.

25.     The defendant, without authorization, arranged for monthly automatic debits from Company A's BB&T account xx5044 to cover her personal expenses for things such as, but not limited to, AT&T and COMCAST. These transactions resulted in a $2,703 loss to Company A.

26.     The defendant caused a check to be issued to "Daniel Marian" for rent at 4469 Barna Avenue in Titusville, FL from Company A's BB&T account No. xx5044.

27.     The defendant, without authorization, made multiple payments to Florida Power & Light Co. from the 12th Street Property SunTrust account No. xx7250, for utilities at 4469 Barna Avenue in Titusville, FL. These unauthorized payments resulted in a $927 loss to Company A.

28.     The defendant, without authorization, paid Dr. Eric S. Markowitz a total of $3,934 for dental treatment that she received.

29.     Through this fraudulent scheme, the defendant's actions resulted in a loss totaling $154,790.64 to Company A.

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343).**

5

## FORFEITURE ALLEGATION

14.     Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C., Section 981(a)(1)(C) and 28 U.S.C., Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in the amount of at least $154,790.64.

15.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the Court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property that cannot be divided without
               difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

CHANNING D. PHILLIPS
United States Attorney
For the District of Columbia

By: 

ADRIENNE C. DEDJINOU
Assistant United States Attorney

6

Bar No. DC 984700
United States Attorney's Office
  For the District of Columbia
555 Fourth Street, N.W, Room 5227
Washington, D.C. 20530
(202) 252-6918
Adrienne.Dedjinou@usdoj.gov