**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.  17-CR-170 (RJL) |
| | : | |
| TERRA GREEN, | : | Sentencing: June 6, 2019 |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

For over two years, Terra Green preyed on the trust and generosity of the attorneys for whom she worked.  Over that time, she stole at least $154,790.64 from the law firm of Terris, Pravlik & Millian, LLP ("TPM"), a small public interest law firm located in Washington, D.C. The defendant used her role as the law firm's office administrator to siphon off funds from the firm.  She used the money she embezzled for personal expenses for herself and family.  Under the advisory Sentencing Guidelines, as stipulated by the government and the defense, the defendant faces 15-21 months in prison at her sentencing hearing scheduled for June 6, 2019.  The government respectfully requests a term of incarceration of 18 months as well as three years of supervised release, restitution in the amount of $154,790.64, and a forfeiture money judgment of the same amount.

### I.   FACTUAL BACKGROUND

On September 13, 2017, the government filed an information charging the defendant with one count of Wire Fraud, in violation of 18 U.S.C. § 1343.  A superseding information was filed on October 2, 2017.

On March 21, 2019, the defendant pled guilty to the sole count of the superseding information in which the defendant is charged with Wire Fraud.  As described in the Statement of

Offense and more fully summarized below, this wire transfer was one of many in furtherance of the defendant's scheme to defraud her employer.

The defendant was hired by TPM in March 2013.[1] As TPM's office manager, the defendant's responsibilities and authority were expansive. She received and paid all the bills and invoices for the law firm. The defendant had check signing authority on the firm's checking account. Through online banking access, the defendant had access and the ability to move funds among TPM's accounts. The firm also provided the defendant with a credit card that was supposed to be used to pay for business expenses. As part her bookkeeping duties, the defendant provided the firm's partners with financial statements. She also reconciled the firm's bank statements with accounting entries in QuickBooks and worked with the firm's outside accountants. Apart from finances, the defendant had the authority to negotiate and take other actions on behalf of TPM with respect to insurance, including health insurance, long-term disability insurance, worker's compensation and general liability insurance.

The defendant was also responsible for managing the building where the firm was located (the "Property"). The Property was owned by one of the law firm's partners. Similar to her duties with TPM, the defendant paid all of the bills and invoices for the Property, and arranged and oversaw the maintenance of the Property.

The defendant's fraud scheme was fairly simple, but lucrative. She used her access and control of TPM and Property accounts to pay for personal expenses for herself and family, transfer money to her personal accounts, and withdraw cash. In total, over the two years that the defendant worked for TPM she stole over $150,000.

The following are examples of how the defendant embezzled money from TPM and the

---

[1] It is the government's understanding that most, if not all, of the facts set forth in this section are undisputed.

Property, and what she spent it on:

| Date | Transcript Description | Amount |
|---|---|---|
| July 26, 2013 | Wire transfer from Property account to defendant's personal account | $3,000 |
| July 31, 2013 | Check written and signed by defendant to "New Haven Management" for rent for the defendant's son. | $525 |
| May 16, 2014 | Check for purchase of a Harley Davidson motorcycle | $15,200 |
| June 24, 2014<br>July 10, 2014 | Cash withdrawals from TPM/Property accounts | $6,000<br>$2,500 |
| August 14, 2014 | Payment to Marlo Furniture for defendant's personal expenses | $837.17 |
| March 10, 2015 | Payment to the Singer Law Firm in Melbourne, Florida for legal representation for the defendant's son | $1,200 |
| March 30, 2015 | Two ATM cash withdrawals | $1,000 |

On at least four hundred (400) occasions, without authorization, the defendant used her TPM-issued credit card to make purchases for personal expenditures totaling approximately $28,676. The defendant also paid, through automatic withdrawals from TPM's BB&T bank account, her monthly PEPCO (utility) bill for her personal account in the total amount of $3,863, and her AT&T and Comcast Cable bills for a total of approximately $2,703.

For several months during her employment with TPM, the defendant used company accounts to pay her rent to Westwood Place Apartments in Fort Washington, MD, totaling approximately $12,911. The defendant also paid approximately $3,934 to her dentist for dental treatment that she received.

To conceal her fraudulent scheme, the defendant provided false financial statements to the owners of TPM regarding the firm's bank accounts. For example, on June 19, 2015, in the last

financial statement she prepared, the defendant stated that as of May 31, 2015, the firm's Bank of America account had a balance of $84,144.78, when this was not true.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

For the crime to which she pled guilty, the defendant faces a maximum sentence of 20 years' imprisonment, three years of supervised release, a fine of not more than $250,000 or twice the pecuniary gain or loss, and a $100 special assessment.

### B. Sentencing Guidelines Calculation

Under the plea agreement, the parties agreed that the defendant's base offense level is 7, and that 10 levels are added because the total loss to TPM exceeds $150,000. The parties also agreed that based on the defendant's criminal history, she has one criminal history point and falls in criminal history category I. After a 3-point reduction based on the defendant's acceptance of responsibility, the parties agree that the defendant's base offense level should be 14. This places the defendant in Zone D of the Voluntary Sentencing Guidelines, with an imprisonment only sentencing range of 15-21 months. In the Presentence Investigation Report ("PSR"), probation added an upward adjustment of 2 levels based upon its finding that the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense, under U.S.S.G. § 3B1.3. *See* PSR ¶ 24. Under the analysis set forth in the PSR, the defendant's guidelines range is 21-27 months. In accordance with the plea agreement, the government is not advocating for a two-level enhancement under U.S.S.G. § 3B1.3. Regardless of the Court's ruling on the application of the enhancement, the government is requesting a sentence of 18 months of incarceration.

### III.   ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that a sentence of 18 months imprisonment is warranted.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007).  Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;  (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

    **A.**  **The nature and circumstances of the offense support the recommended sentence.**

The nature and circumstances of the offense demonstrate the defendant's clear criminal intent to engage in an extensive fraud and embezzlement scheme.  The defendant's fraud scheme was not a one-time act that might be attributable to a lapse in judgment.  Nor was the defendant's conduct a singular act of desperation due to a catastrophic life event.  On the contrary, it was a

multi-year scheme in which the defendant stole money from a law firm that wound up threatening the financial stability of the practice, its partners, and their employees. Through the more than two years that she stole from the firm, the defendant had ample opportunity to reflect on the wrongfulness of her course of conduct and, rather than put an end to her scheme, chose to continue to enrich herself and others at the expense of her employer.

The defendant did not confine herself to stealing from the firm using a single means. Rather, she took money to which she was not entitled by writing checks to herself, initiating wire transfers to pay for personal expenses, obtaining cash, and using the TPM credit card to pay for a multitude of personal expenses for herself and others. Indeed, the expenses on which the defendant spent the money she stole ranged from the most ordinary, everyday expenses such as utilities and her cable bill, to rash purchases like a Harley Davidson motorcycle for over $15,000. Time after time, check after check, transaction after transaction, the defendant knew what she was doing was wrong and that it was a crime.

The circumstances of the offense also evidence the absence of any mitigating circumstances. The defendant did not steal the money out of selfless concerns, imminent needs, or the inability to earn the money through legitimate means. Indeed, the defendant was gainfully employed, paid a respectable salary of approximately $75,000 per year, and provided health insurance. Instead, the defendant stole out of greed, and a desire to spend the stolen money in whatever manner she chose.

The defendant's crime falls squarely within the class of cases to which the applicable Guidelines are addressed. Thus, consideration of the nature and circumstances of the offense favors a sentence within the advisory Guidelines range agreed upon by the parties. Because the nature and circumstances of this offense also reflect blatant, repetitive, and persistent criminal

behavior, this factor suggests that a sentence of incarceration is appropriate.

    **B.**    **The history and characteristics of the defendant support the recommended sentence.**

This offense is not the first fraud scheme perpetrated by the defendant. In May 2006, the defendant was arrested and charged with Bank Fraud in the United States District Court for the District of Maryland, case number 06-cr-181. PSR ¶ 32. After receiving a sentence of only 1 day in prison, the defendant was ordered to pay $86,813.96 in restitution. According to the PSR, nearly 13 years later, the defendant still owes $64,813.96 in restitution. More importantly, the defendant engaged in the instant offense despite having an outstanding restitution obligation from a separate federal conviction. Notwithstanding, to her credit, the defendant accepted responsibility in this case and entered a guilty plea at an early stage of the proceedings. Although it does not diminish the egregious nature of her conduct, the defendant does deserve some measure of credit for her acceptance of responsibility.

    **C.**    **The recommended sentence is consistent with the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; and (C) to protect the public from further crimes of the defendant.**

The recommended sentence is appropriate to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). The defendant's offense spanned more than two years and resulted in a loss of over $150,000. Her punishment must also deter others in similar positions from engaging in similar fraud and embezzlement schemes. Moreover, the lack of any true period of incarceration in connection with the defendant's prior federal criminal matter, also involving a fraud scheme, demonstrates that the government's recommendation for a sentence of incarceration is necessary to deter the defendant

from committing criminal offenses in the future. The question, in the government's view, is not whether incarceration is appropriate, but rather how much incarceration time is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). The government believes that the various factors at issue in this case – in particular, the duration of the defendant's scheme, the manner and means used to repeatedly execute the scheme, the amount of loss at issue, juxtaposed with the defendant's acceptance of responsibility and other considerations – all suggest that a sentence of 18 months of imprisonment is appropriate. The government also respectfully recommends the maximum period of supervised release, *i.e.*, three years.

The government is not aware of a need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

### D. Restitution and Forfeiture

"The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, requires a district court to order a defendant to make restitution to a victim of certain specified offenses." *United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016) (internal quotations and citations omitted). The offenses subject to the MVRA are listed in section 3663A(c). *See* 18 U.S.C. § 3663A(c). They include "any offense that is . . . an offense against property under this title . . . including any offense committed by fraud or deceit." *Id*. § 3663A(c)(1)(A)(ii). The MVRA applies to the defendant's criminal conduct.

Apart from the determination of mandatory restitution, the Defendant agreed in her plea agreement to pay $154,790.64 in restitution. The government requests that the Court order the defendant to pay the restitution as follows: *First*, payment of $65,050.39 to TPM. *Second*, payment of $89,740.25 to The Hanover Insurance Group. *See* 18 U.S.C. § 3664(j)(1) ("If a victim

8

has received compensation from insurance or any other source with respect to a loss, … the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation" [*i.e.*, an insurer]).

Based on a "Declaration of Victim Losses" submitted by Kathleen L. Millian (*see* ECF Dkt. No. 20), TPM is requesting restitution in the amount of $76,599.19, which subtracts out proceeds TPM received from Hanover.  However, just over $10,000 of that amount is for a forensic audit and non-compensable expenses (*i.e.*, locks and other computer security measures).  These amounts are not recoverable under the MVRA.  *See Lagos v. United States*, 138 S. Ct. 1684, 1690 (2018) (noting that the MVRA "does not cover the costs of a private investigation that the victim chooses on its own to conduct.").

Consistent with the plea agreement, the Government does not seek restitution beyond the amounts in the plea agreement.  The burden is on TPM to prove its claim.  *See United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015).  The Government takes no position on the merits of its request.

The government further requests that the Court enter the final order of forfeiture and incorporate it as a part of the judgment.

## IV.    CONCLUSION

For all the foregoing reasons, the appropriate considerations of sentencing favor the imposition of a sentence of imprisonment of 18 months' incarceration followed by three years of supervised release.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845


By: _____/s/_____
David Misler
D.C. Bar No. 991475
Assistant United States Attorney
  For the District of Columbia
555 Fourth Street, N.W., Room 5828
Washington, D.C. 20530
202-252-7164
david.misler@usdoj.gov